**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-30328**
**Summary Calendar**
_____


**CHARLOTTE GIACONNA,**

**Plaintiff-Appellant,**

**versus**

**EDWARD OFRIEL, ET AL.;**

**Defendants,**


**OLD REPUBLIC INSURANCE COMPANY,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**
**(95-CV-3017-F)**
_____

September 5, 1996

Before JONES, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Charlotte Giaconna was injured while driving a car owned by her employer, National Health Laboratories, Inc. ("NHL"), and insured under NHL's policy with defendant-

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

appellee Old Republic Insurance Company. The other driver involved in the collision, Robert Coussan, was driving a car owned by Edward Ofriel. Giaconna sued Coussan, Ofriel, and their respective insurers, State Farm Mutual Automobile Insurance Company and Geico Insurance Company, and settled for Coussan's and Ofriel's policy limits.

Giaconna contended that these amounts were insufficient to compensate for her injuries. Before settling with the above four parties, she amended her complaint to add Old Republic as a defendant. She sought to collect against it under the uninsured and underinsured motorists ("UM") provisions of Louisiana law incorporated into NHL's policy with Old Republic. Old Republic, however, asserted that NHL had affirmatively waived its right to UM coverage. The district court agreed and granted summary judgment to Old Republic. Giaconna timely appealed. We affirm.

Giaconna contends on appeal that Old Republic's waiver form did not satisfy the requirements for a UM waiver under Louisiana law, and thus that NHL's waiver was invalid. Specifically, she contends that (a) the district court erred in considering the instructions accompanying the rejection form in interpreting that form; (b) the form was ambiguous because it implied that NHL had to affirmatively accept, rather than affirmatively reject, UM coverage; and that (c) the form was ambiguous because it implied that underinsured motorists coverage would be "included" in NHL's policy even if NHL waived uninsured

2

motorists coverage.  We reject Giaconna's contentions.

Louisiana Revised Statute 22:1406(D)(1)(a) provides that "uninsured motorists coverage is deemed to exist in all automobile policies in an amount equal to the liability limit unless the insured expressly rejects the uninsured motorists coverage." Chevalier v. Ream, 649 So.2d 746, 748 (La.Ct.App. 1994).  While the statute does not specify how the insured's rejection is to be effected, the Louisiana Supreme Court has held that the rejection must satisfy the following requirements:

> [A] valid rejection must be in writing and signed by the named insured or his legal representative.  Further, the insurer must place the insured in a position to make an informed rejection of UM coverage.  In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" of his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage.

Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La. 1992) (internal citations omitted).

In the instant case, the district court did not err in determining that Old Republic's UM rejection form satisfied the requirements set forth in Tugwell, supra, and thus did not err in determining that NHL's rejection was valid.  First, it is undisputed that NHL's waiver was in writing and signed by its legal representative.  Second, Old Republic's rejection form unambiguously explained the insured's options regarding UM coverage

3

and set forth the required three choices. The form consists of a chart in which the insured would check the box "Accept" or "Reject" for each category of UM coverage provided (uninsured motorists-bodily injury, uninsured motorists-property damage, and underinsured motorists coverage). If the insured marked the box "Accept," the form has a blank space for the insured to specify his desired policy limits. See Tugwell, 609 So.2d at 199 (stating that insurer can satisfy waiver requirements "through the use of blanks and boxes"). The instruction manual accompanying the waiver form also explain the insured's options. The instructions state:

> You [the insured] MAY REJECT bodily injury uninsured motorists coverage. Once you reject it, we will not add bodily injury to any renewal policy unless you request us to do so in writing.
>
> If you do not reject it, we must provide bodily injury uninsured motorists coverage to you at a limit equal to your policy's bodily injury liability limit. You MAY SELECT a higher or lower limit.

It is undisputed that NHL checked the box "Reject" for each UM category.

Giaconna, however, urges that Old Republic's form is not so straightforward. Initially, she contends that the district court erred in considering the instructions accompanying the waiver form. We disagree. The waiver form is to be filled out in accordance with these instructions. They are thus an intrinsic part of the waiver.

Next, Giaconna contends that the waiver form was

4

ambiguous because it contained a box for the insured to check if he accepted UM coverage.  Apparently, Giaconna is arguing that the "Accept" box could have misled NHL into believing that it had to affirmatively accept rather than affirmatively reject UM coverage. To the contrary, the "Accept" box is required by Louisiana law; Tugwell, supra, held that the waiver must inform the insured of all three options regarding UM coverage, including the option to accept it.  Also, we point out that the instructions accompanying the waiver states that Old Republic would provide UM coverage unless NHL expressly waived it:  "[i]f you do not reject it, we must provide bodily injury uninsured motorists coverage to you at a limit equal to your policy's bodily injury liability limit."

Finally, we reject Giaconna's contention that Old Republic's waiver form was ambiguous because it states that underinsured motorists coverage is "included" and has dashes in the Accept and Reject boxes under that column.  Giaconna contends that NHL could have interpreted "included" and the dashes to mean that underinsured motorists coverage would be included in the policy even if NHL waived uninsured motorists coverage.  To the contrary, the accompanying instructions explain that the underinsured motorists coverage is included in the uninsured motorists coverage. The instructions provide:

> **Underinsured Motorists Coverage:**
> This coverage is automatically included in the Uninsured Motorists Bodily Injury Coverage Endorsement at the same limit as you chose for

5

> uninsured motorists coverage. You may not
> reject this coverage unless you also reject
> uninsured motorists coverage.

The dashes in the "Accept" and "Reject" boxes obviously indicate that the insured may not accept or reject underinsured motorists coverage separate from uninsured motorists coverage in Louisiana.

In conclusion, the district court did not err in determining that NHL validly waived its right to UM coverage under Old Republic's policy. The judgment of the district court is **AFFIRMED**.

6